IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KURT EBERSPACHER and THE BRUCKNER/FOWLES LAW FIRM, P.C., L.L.O., | ) ) ) ) | |
| Plaintiffs, | ) ) | 4:04CV3304 |
| v. | ) ) | |
| MUTUAL OF OMAHA INSURANCE COMPANY, | ) ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) ) | |

INTRODUCTION

The parties have each filed a motion for summary judgment to
resolve a dispute over who should pay $7,262.00 in attorney fees
and $605.00 of the expenses incurred in successfully litigating
the workers' compensation case filed by Kurt Eberspacher
("Eberspacher") against the State of Nebraska ("State").  Filings
22 and 24.  Eberspacher's award from the Nebraska Workers'
Compensation Court included an award of medical expenses totaling
$21,876.41 which had already been paid by the defendant Mutual of
Omaha Insurance Company ("Mutual of Omaha").  The plaintiffs
argue they are entitled to recover attorney fees and expenses
related to securing this reimbursement for Mutual of Omaha under
Nebraska's common fund doctrine.  Filing 22.  The defendant
claims the Employee Retirement Income Security Act of 1974, 29
U.S.C. §§1001 et. seq. ("ERISA") preempts Nebraska law on this
issue and based on ERISA or, in the alternative, the common law
of restitution for payments made by mistake, asks for a judgment
declaring that the plaintiffs are not entitled to deduct
attorney's fees and expenses from Mutual of Omaha's reimbursement
recovery.  Filing 24.

JURISDICTION

This case was originally filed in the District Court of
Lancaster County, Nebraska.  It was removed to this court by
Mutual of Omaha, which asserts that plaintiffs' state claims
relate to the civil enforcement provisions of ERISA, and
therefore this court may exercise federal question subject matter
jurisdiction over the case.  I agree and conclude this court has
subject matter jurisdiction to resolve the parties' dispute.  See
Lyons v. Philip Morris Inc., 225 F.3d 909 (8th Cir. 2000)(federal
question subject matter jurisdiction existed over state claims
removed to federal court wherein medical insurance provider was
seeking third-party recovery pursuant to a subrogation clause of
an ERISA-regulated medical insurance plan).

STATEMENT OF FACTS

The parties have submitted this case on stipulated facts.
The following is a summary of those facts.

On November 14, 2001 Eberspacher was injured when his
vehicle was rear-ended.  Eberspacher was performing employment
duties for the State at the time of the accident, and he received
medical care for at least two years following the accident.
During this period of time, Eberspacher was a covered beneficiary
under an Ameritas employee benefit plan which included medical
insurance coverage provided by Mutual of Omaha.  The Ameritas
employee benefit plan at issue is subject to the regulatory
provisions of ERISA.

Eberspacher sought workers' compensation benefits from the
State and claimed he injured his low back, right shoulder, and

neck in the November 2001 accident.  The State paid for some of
the plaintiff's medical treatments, but contested the
reasonableness and necessity of other medical treatments received
by the plaintiff.  The State concluded Eberspacher's shoulder
injuries were not related to the accident, and based on an
independent medical examination performed in the summer of 2002,
also concluded the plaintiff had reached maximum medical
improvement with respect to his neck and back injuries and
refused to make further payments for medical care related to
those injuries.

On May 7, 2002 Eberspacher entered into a one-third
contingency fee agreement with the Bruckner/Fowles law firm and
retained that firm to represent him in recovering workers'
compensation benefits from the State for injuries arising in the
November 2001 accident.  Though the State had stopped paying for
Eberspacher's medical care after receiving the 2002 IME report,
the plaintiff continued thereafter to receive treatments for his
back and shoulder injuries and submitted the bills for these
treatments to Mutual of Omaha.

However, in February 2002 Mutual of Omaha became aware that
Eberspacher was claiming his November 2001 accident was work-
related, and that he suffered injuries requiring on-going
treatment in that accident.  Under the "General Exclusions and
Limitations" section of the Mutual of Omaha policy, benefits were
not provided for any injury or sickness arising "out of or in the
course of any employment with any employer" or for which the plan
participant "is entitled to benefits under a workers'
compensation," or "receives any settlement from a workers'
compensation carrier."  Filing 25, Ex. A (Benefits Document,
effective January 1, 2000) at p. 39; filing 25, Ex. B (Benefits

Document, effective January 1, 2002) at p. 41.  Based on these
policy exclusions, and upon notice that Eberspacher was injured
in the course and scope of his employment, Mutual of Omaha began
declining coverage for Eberspacher's medical treatments.  Mutual
of Omaha's representative, "Accent," sent a notice to the
Bruckner/Fowles law firm on September 16, 2002 advising the firm
of Mutual of Omaha's subrogation claim for medical expenses paid
for the work-related accident, and further stated that the policy
and the right of subrogation was governed by ERISA.  In November
2002 Bruckner/Fowles requested an explanation of why Mutual of
Omaha was denying coverage.  Thereafter, Mutual of Omaha resumed
payment of medical bills for treatment of Eberspacher's shoulder
injury when, in March of 2003, the State's third party claims
administrator, Sedgwick Claims Management Services, Inc, advised
Mutual of Omaha that the shoulder injury was not related to the
accident.

    However, Eberspacher's workers' compensation suit filed
against the State in October 2002 claimed a right to recover for
back, neck, and shoulder injuries arising from the November 2001
accident.  Bruckner/Fowles invested time and resources in
preparing for trial, with those efforts focused on proving
Eberspacher's shoulder injury was work-related, establishing
medical causation as to the back and neck injuries, disputing the
State's determination that back injury reached maximum medical
improvement as early as the summer of 2002, and proving the
medical expenses related to these injuries.  Eberspacher's suit
was successful and the Nebraska Worker's Compensation court
entered an award in his favor on June 2, 2004.

    The workers' compensation award included amounts already
paid by Mutual of Omaha for Eberspacher's medical expenses.

Between November 26, 2001 and December 1, 2003, Mutual of Omaha paid approximately $21,876.41 for medical services (the discounted price for "billed" amounts totaling $32,608.87) provided to Eberspacher for injuries which, according to the workers' compensation court's 2004 ruling, were caused by the November 2001 accident.

After the workers' compensation court entered it ruling, the State directly paid plaintiff's medical providers for the medical expenses it had previously denied but was now obligated to pay by court order.  These providers had already been paid by Mutual of Omaha and, with the exception of Associated Anesthesiologists, each medical provider sent the money received from the State on to Mutual of Omaha.  Associated Anesthesiologists sent the State's payment to the Bruckner/Fowles law firm which ultimately also sent the money on to Mutual of Omaha.  Accordingly, from the recovery received by Eberspacher in the worker's compensation case, Mutual of Omaha has been reimbursed in the amount of $21,876.41, the total amount it paid for treatment of plaintiff's work-related injuries.

The "Third Party Reimbursement and/or Subrogation" section of the Mutual of Omaha policy provides that if a plan beneficiary's injury or sickness was "caused by a third party's act or omission," Mutual of Omaha would "pay contract benefits for that injury or sickness subject to [its] reimbursement and subrogation rights. . . ."  Filing 25, Ex. A (Benefits Document, effective January 1, 2000) at p. 68; filing 25, Ex. B (Benefits Document, effective January 1, 2002) at p. 68.  Under the subrogation rights provisions of the policy, Mutual of Omaha has the right to enforce recovery of contract benefits paid because of an injury or sickness caused by a third party's act or

omission, and is entitled to be paid first out of any such recovery irrespective of whether the injured party was "made whole" by the recovery. Under the policy terms, Mutual of Omaha's right to reimbursement arises when the insurer pays "contract benefits . . . because of an injury or sickness caused by a third party's act or omission," and the insured "recovers an amount form the third party, . . . or anyone else by reason of the third party's act or omission." The policy further provides that "[t]he amount of [Mutual of Omaha's] reimbursement will not be reduced by legal fees or court costs incurred in seeking the recovery," unless the insurer "agree[s] otherwise in writing." Mutual of Omaha never agreed in writing to have attorney fees and court costs deducted from its reimbursement for amounts paid for Eberspacher's medical treatments caused by the November 2001 accident. Filing 25, Ex. A (Benefits Document, effective January 1, 2000) at p. 68; filing 25, Ex. B (Benefits Document, effective January 1, 2002) at p. 68-69.

The plan language also provides as follows:

By purchasing this Contract, the Contractholder grants Exclusive Healthcare, Inc. the discretion and the final authority to construe and interpret the Contract. This means that Exclusive Healthcare, Inc. has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any Contract benefits within the terms of the Contract as interpreted by Exclusive Healthcare, Inc. In making any decision, Exclusive Healthcare, Inc. may rely on the accuracy and completeness of any information furnished by the Contractholder or member. Exclusive Healthcare Inc.'s interpretation of the Contract as to the amount of benefits and eligibility will be binding and conclusive on all persons.

Filing 25, Ex. A (Benefits Document, effective January 1, 2000) at p. 84; filing 25, Ex. B (Benefits Document, effective January 1, 2002) at p. 87.

6

The issue before the court is whether the plaintiffs are entitled to collect the reasonable costs and attorney fees incurred to obtain recovery from the State of the amounts paid by Mutual of Omaha for Eberspacher's work-related injuries. Bruckner/Fowles claims Mutual of Omaha benefitted from the firm's legal work and under Nebraska's common fund doctrine, Mutual of Omaha must pay the reasonable costs and fees to obtain this third party recovery from the State. Mutual of Omaha claims that under the terms of the insurance policy, absent written authority to do so, its right to reimbursement cannot be reduced by the amount of attorneys fees and costs, and to the extent Nebraska public policy or common law would prohibit enforcing this policy term, ERISA preempts Nebraska law. Mutual of Omaha further claims that the reimbursements it has now received pursuant to the workers' compensation court's ruling were for payments made on the basis of mistake; payments Mutual of Omaha was never obligated to make because the injuries were work-related. Mutual of Omaha argues it cannot equitably be required to pay attorney fees and costs to recover amounts it never owed.

## STANDARD OF REVIEW

Motions for summary judgment are an integral part of the Federal Rules of Civil Procedure and designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of summary judgment procedure is to isolate and dispose of factually unsupported claims or defenses." Celotex, 477 U.S. at 323-24. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the material facts are undisputed and support a judgement as a

matter of law.  <u>Lester E. Cox Medical Center, Springfield, Mo. v.</u>
<u>Huntsman</u>, 2005 WL 1278518, *2 (8th Cir. June 1, 2005)(citing
<u>Celotex</u>, 477 U.S. at 323; <u>Anderson v. Liberty Lobby, Inc</u>., 477
U.S. 242, 252 (1986)).

     The material facts of this case are undisputed; the case has
been submitted for a decision on the merits based on stipulated
facts.  Therefore, the resolution of the parties' cross-motions
for summary judgment rests solely on questions of law.  See e.g.
<u>United Steelworkers of America, AFL-CIO-CLC, Local No. 164 v.</u>
<u>Titan Tire Corp</u>., 204 F.3d 858, 860 (8th Cir. 2000); <u>Minnesota,</u>
<u>Dept. of Revenue v. U.S.</u>, 184 F.3d 725, 728 (8th Cir. 1999).

LEGAL ANALYSIS

     The parties have extensively and thoroughly briefed the
legal issues of this case.  The issues raised can be summarized
as follows:

- The plaintiffs argue that to the extent the policy
  language states that attorneys fees and costs cannot be
  deducted from amounts reimbursed to Mutual of Omaha,
  the language cannot be enforced in this case because:

  1) The Bruckner/Fowles Law Firm was not a party to
     the contract;

  2) The policy's subrogation or reimbursement rights
     arise when the injured person recovers from the
     party at fault, and not when he receives a no-
     fault workers' compensation award;

  3) Policy language which attempts to eliminate
     Nebraska's common fund rule violates Nebraska
     public policy;

4) Nebraska law applies because: a) Mutual of Omaha is an insurance company; b) Nebraska's common fund doctrine is a law that regulates insurance; and, therefore, c) Nebraska's common fund rule is not preempted by ERISA under the facts of this case;

5) To the extent Eighth Circuit law allows employee benefit plans to accept the benefit of attorney labor that secures a third party recovery without paying for that work, this law is inequitable, against public policy, and should be overturned.

• Mutual of Omaha argues it is entitled to reimbursement without any deduction for attorneys fees and costs because:

1) The policy language provides for such reimbursement where, as here, a workers' compensation award includes recovery of medical expenses already paid by Mutual of Omaha and arising from injuries caused by the acts or omissions of a third party;

2) Nebraska law to the contrary is preempted because Nebraska's common fund doctrine is not a law regulating insurance for the purposes of ERISA;

3) Irrespective of the policy language, Mutual of Omaha is entitled to full restitution from Eberspacher for all mistakenly paid benefits; and

4) Even assuming the plaintiffs could prove Mutual of Omaha has a duty to pay attorney fees and costs related to the reimbursement recovery, the plaintiffs have failed to present evidence as to the amount of attorneys fees and costs to be offset.

The parties' dispute focuses on two sections of the Mutual of Omaha policy: the subrogation and reimbursement provisions, and the workers' compensation exclusion. Mutual of Omaha claims these policy provisions support two distinct legal bases for finding that the plaintiffs are not entitled to recover attorney

fees and costs in pursuing the workers' compensation claim; the plaintiffs claim the two sections cannot be reconciled or create ambiguity in the policy under circumstances where Mutual of Omaha is seeking reimbursement from a workers' compensation award.

A.    ERISA or Nebraska law.

The initial question is whether federal ERISA and common law or, in the alternative, Nebraska law governs this dispute.  ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan," (29 U.S.C. § 1144(a)), except for those state laws which "regulate insurance, banking or securities."  29 U.S.C. § 1144(b)(2)(A) (known as the "savings clause").  To further secure the preemptive policies of ERISA, a state is prohibited from "deeming" an employee benefit plan to be an insurance company for the purposes of subjecting the plan to state insurance regulation.  29 U.S.C. § 1144(b)(2)(B)(known as the "deemer clause"); FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990).  ERISA's preemption statutes were intended by Congress "to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among states or between states and the Federal Government." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990)(ERISA preempted an employee's state law wrongful discharge claim where the employee alleged he was discharged because the employer wanted to avoid contributing to his pension fund).

A focal issue in this case is whether, under the undisputed facts of this case, Nebraska's common fund doctrine is preempted by ERISA.  Nebraska law provides:

> An attorney who renders services in recovering or
> preserving a fund, in which a number of persons are
> interested, may in equity be allowed his compensation
> out of the whole fund, only where his services are
> rendered on behalf of, and are a benefit to, the common
> fund.

United Services Automobile Assn. v. Hills, 172 Neb. 128, 132, 109 N.W.2d 174, 177 (1961)(attorney who negotiated a tort settlement on behalf of his client was entitled to compensation from the insurance company which was reimbursed from the settlement). Under Nebraska's common fund doctrine, an attorney who obtains a favorable award for his client in a workers' compensation action can recover a pro rata share of his fees from a medical insurer who obtains reimbursement from a workers' compensation award. Kaiman v. Mercy Midlands Medical & Dental Plan, 1 Neb. App. 148, 491 N.W.2d 356 (1992).  The common fund doctrine permits an injured worker "to shift an appropriate share of the cost of the litigation to a health care insurer who directly and substantially benefits by the litigation through reimbursement." Kaiman, 1 Neb. App. at 162, 491 N.W.2d at 363.

Eberspacher's health care insurance was provided through an ERISA-regulated employee benefit plan.  Nebraska's common fund doctrine "relates to" this employee benefit plan if it "refers to or has a connection with" the covered benefit plan even if the law is not specifically designed to affect such a plan, or the effect is only indirect, and even if the state law is consistent with ERISA's substantive requirements.  United of Omaha v. Business Men's Assur. Co. of America, 104 F.3d 1034, 1039 (8th Cir. 1997)(citing and quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129-30 (1992) (quoting, and citing internally, Ingersoll-Rand, 498 U.S. at 139 and Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 732

11

(1985)).  State statutory or common laws which arguably curtail a
fund's claimed right of subrogation, or prohibit workers'
compensation benefits from being offset against plan benefits are
connected with and "relate to" the employee benefit plan.
<u>Holliday</u>, 498 U.S. at 58 (subrogation); <u>Baxter By and Through
Baxter v. Lynn</u>, 886 F.2d 182, 185 (8th Cir. 1989)(en
banc)(subrogation); <u>Alessi v. Raybestos- Manhattan, Inc</u>., 451
U.S. 504 (1981)(workers' compensation offset).  I therefore
conclude that the parties' claims concerning the extent of Mutual
of Omaha's reimbursement rights under the plan, and the
plaintiffs' claim for common fund recovery, "relate to" the plan.
Consequently, ERISA preempts Nebraska's subrogation and common
fund law in this case unless that state law "regulate[s]
insurance" as that term is interpreted under ERISA's "savings
clause."  29 U.S.C. § 1144(b)(2)(A).

    To avoid ERISA preemption under the ERISA savings clause a
state law must be "specifically directed toward entities engaged
in insurance," (<u>Kentucky Assn. of Health Plans v. Miller</u>, 538
U.S. 329, 341-342 (2003), and applied to the "business of
insurance" within the meaning of the McCarran-Ferguson Act.
<u>United of Omaha</u>, 104 F.3d at 1039-1040 (citing <u>Pilot Life Ins.
Co. v. Dedeaux</u>, 481 U.S. 41, 50 (1987); <u>Metropolitan Life</u>, 471
U.S. at 742-43; <u>Baxter</u>, 886 F.2d at 185)).  A state law applies
to the business of insurance under the McCarran-Ferguson Act if
it (1) has the effect of transferring or spreading the
policyholder's risk; (2) is an integral part of the policy
relationship between the insurer and the insured; and (3) is
limited to entities within the insurance industry.  <u>United of
Omaha</u>, 104 F.3d at 1039-1040 (citing  <u>Metropolitan Life</u>, 471 U.S.
at 743).

The plaintiffs argue that Nebraska subrogation law and the common fund doctrine regulate insurance and thus, escape ERISA preemption.  The Eighth Circuit has held to the contrary.

> [T]he law of subrogation, while generally applicable to insurance contracts, is not specifically directed toward the insurance industry.  While laws regulating subrogation rights apply in part to holders of insurance, they do not regulate the insurance industry directly.  Application of differing state subrogation laws to plan providers throughout the United States would frustrate ERISA's uniform treatment of benefit plans.  Thus, a common sense reading of the insurance saving clause indicates that common law rules on subrogation are not the type of state insurance regulations intended to survive the broad scope of ERISA preemption. . . . [T]he three-part analysis under the McCarran-Ferguson Act yields a similar result.  The practice of subrogation does not transfer the risk from a policyholder to his or her insurer.  Rather, it limits the recovery available to the policyholder by preventing a double recovery.  While we believe that subrogation rights play an integral role in defining the relationship between [the plan beneficiary] and the Fund, we believe that the laws of subrogation are applied in many factual circumstances unrelated to the insurance industry.

Baxter, 886 F.2d at 186.  See also Provident Life and Acc. Ins. Co. v. Linthicum, 930 F.2d 14, 16 (8th Cir. 1991)(ERISA preempted state subrogation law in action by health benefits plan to recover funds paid for medical expenses).

Moreover, the Nebraska court has held that Nebraska's common fund doctrine is not directed at any specific type of claimant.  The doctrine provides for a proportionate recovery of legal expenses and costs from any person or entity that has "so benefitted by the patients' attorneys who rendered services in obtaining settlements that the attorneys should in equity be allowed their compensation out of the whole fund."  In re

<u>Guardianship & Conservatorship of Bloomquist</u>, 246 Neb. 711, 523
N.W.2d 352 (1994)(applying common fund doctrine to hospital
asserting a lien on personal injury settlement).

Though Mutual of Omaha is an insurance company,
29 U.S.C. § 1144(b)(2)(A) saves laws that regulate the insurance
industry, not the insurers.  <u>Kentucky Ass'n of Health Plans,
Inc</u>., 538 U.S. at 334.  Nebraska's subrogation and common fund
principles are not directed at regulating insurance practices;
are not "saved" by the ERISA savings clause; and where an
employee benefit plan is at issue, ERISA preempts these state
laws.

B.   <u>Application of ERISA Law.</u>

     1.   Reimbursement under the Language of the Plan.

The plaintiffs claim that the subrogation/reimbursement
provisions of the plan are not applicable to the circumstances of
this case.  Under the plan language, the right to subrogation or
reimbursement arises when Mutual of Omaha pays expenses for
injuries "caused by a third party's act or omission."  The
plaintiffs claim this phrase means reimbursement rights may be
asserted against only fault-based damage awards, and since
workers' compensation is not a fault-based recovery system, the
reimbursement provisions of the plan do not extend to
Eberspacher's workers' compensation award.  They also argue this
interpretation is consistent with other plan language which
denies coverage for work-related injuries.

A primary purpose of ERISA is to ensure the integrity of
written, bargained-for benefit plans.  "A subrogation provision

affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan." Waller v. Hormel Foods Corp., 120 F.3d 138, 140 (8th Cir. 1997)(citing Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511 (1981); John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1303-04 (8th Cir. 1994). See also Mid Atlantic Medical Services, LLC v. Sereboff, 407 F.3d 212 (4th Cir. 2005); Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 276 (1st Cir. 2000).

The policy at issue states when a plan beneficiary's injury was "caused by a third party's act or omission," the plan will "pay contract benefits for that injury or sickness subject to [its] reimbursement and subrogation rights. . . ." Mutual of Omaha's claim arises under the reimbursement provisions of the plan.[1] The right to reimbursement arises when the insured "recovers an amount from the third party, . . . or anyone else by reason of the third party's act or omission."

This plan language is not ambiguous. It states that if Eberspacher's injury was caused by the act or omission of some third party, and Eberspacher recovers from either the third party or anyone else for the injuries caused by the third party's act or omission, Mutual of Omaha is entitled to assert the reimbursement rights described in the plan. Eberspacher

---

[1]Reimbursement and subrogation are distinct remedies. Subrogation allows the plan to stand in the shoes of its member and enforce the plan member's rights and remedies against third parties through litigation. Reimbursement affords the plan a direct right of recovery against the plan member for amounts the member secured through litigation or otherwise. Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 278 (1st Cir. 2000).

recovered from the State for medical expenses caused when his vehicle was rear-ended by a third party. Under the clear language of the plan's subrogation/reimbursement provisions, Mutual of Omaha is entitled to reimbursement from the workers' compensation award paid by the State.

Even assuming some ambiguity exists in the reimbursement provisions, this is an ERISA plan which grants the plan administrator discretion and authority to interpret the meaning of its terms. The plan administrator is vested with the "discretion and the final authority to construe and interpret the Contract," the responsibility of deciding "all questions of eligibility and all questions regarding the amount and payment of any Contract benefits within the terms," and the administrator's "interpretation of the Contract as to the amount of benefits and eligibility will be binding and conclusive on all persons." When, as in this case, the plan grants discretionary authority to the plan administrator to determine eligibility under the plan, and to interpret the terms of the plan, the decision of the plan administrator is reviewed for an abuse of discretion. <u>Tillery v. Hoffman Enclosures, Inc</u>., 280 F.3d 1192, 1196-97 (8th Cir. 2002). Plan language granting such authority to administrators is controlling on the court; the court will not ignore it by construing the plan strictly against the drafter under the federal common-law rules of contract construction. <u>Kennedy v. Georgia-Pacific Corp</u>. 31 F.3d 606, 609 (8th Cir. 1994)(holding Georgia-Pacific was vested with discretionary authority over the plan where the plan stated the plan administrator "shall be solely responsible for the administration and interpretation of this Plan").

The Eighth Circuit has identified five factors to be
considered in determining the reasonableness of a plan
administrator's interpretation of a plan: 1) whether the
interpretation contradicts the plan's clear language, 2) whether
the interpretation renders any plan language internally
inconsistent or meaningless, 3) whether the interpretation is
consistent with earlier interpretations, 4) whether the
interpretation is consistent with the plan's goals, and 5)
whether the plan satisfies ERISA requirements.  <u>Kennedy</u>, 31 F.3d
at 609.

As previously explained, I conclude that the clear language
of the plan entitles Mutual of Omaha to obtain reimbursement from
Eberspacher's workers' compensation recovery.  The plaintiffs'
argument overlooks the plan's language affording reimbursement
rights if the member recovers from the third party "or anyone
else by reason of the third party's act or omission."

Contrary to the plaintiffs' argument, allowing reimbursement
to be collected from a workers' compensation recovery is not
inconsistent with other plan provisions and does not render the
policy's work-related injury exclusion meaningless.  The work-
related injury exclusion certainly limits the number of times
reimbursement will be sought from a workers' compensation
recovery; when the plan administrator knows the accident is work-
related and covered by workers' compensation, the plan does not
pay the expenses and no right of reimbursement arises.  However,
there is nothing in the language of the work-related injury
exclusion or the remainder of the policy which operates to
prohibit reimbursement when the plan administrator believed the
injuries were not work-related at the time payments were made.

The parties have stipulated that the plan is an ERISA-regulated plan. There is no evidence that it fails to satisfy any ERISA requirements, nor is there evidence of how this plan has been interpreted in past similar situations. Permitting reimbursement from workers' compensation is, however, consistent with the plan's goals. The fund must serve the best interests of all plan beneficiaries, not just the interest of one potential beneficiary. ERISA neither requires subrogation/reimbursement clauses in employee benefit plans, nor does it regulate their contents. Employers have substantial leeway "to design disability and other welfare plans as they see fit." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003). But the fund "must serve the best interests of all plan beneficiaries, not just the best interest of one potential beneficiary." Kress v. Food Employers Labor Relations Ass'n, 391 F.3d 563, 571 (4th Cir. 2004)(citing Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 234 (4th Cir. 1997)).

The fund at issue had no obligation to advance medical expenses to Eberspacher for injuries caused in a work-related accident. However, by doing so, it essentially provided Eberspacher with an interest-free loan and continuous access to medical treatment while his workers' compensation litigation was pending. Eberspacher was not required to accept these benefits; he could have advised Mutual of Omaha that the injuries were work-related and pursued recovery under only workers' compensation. By accepting medical expense payments from Mutual of Omaha, Eberspacher also accepted the plan's reimbursement obligations. Although Bruckner/Fowles was not a party to the ERISA plan, as counsel for Eberspacher it is nonetheless also bound by the subrogation/reimbursement terms of the plan. It is not unfair, unreasonable, a violation of ERISA's intent, or

18

contrary to the plan's intent to afford Mutual of Omaha a right to reimbursement from Eberspacher's workers' compensation award. See e.g. <u>Kress,</u> 391 F.3d at 570-71 (where the plan was not obligated to advance expenses to a plan member injured by a third party, having done so, it was entitled to reimbursement, without any deduction for attorney fees, from the member's third party recovery despite that fact that his counsel was not a party to the plan agreement).

The plaintiffs claim that even if Mutual of Omaha can assert a right to reimbursement under the subrogation/reimbursement provisions of the policy, it must still pay a pro rata share of the legal fees and expenses associated with obtaining that recovery. They argue that a contrary finding would violate Nebraska law and public policy, and to the extent Eighth Circuit law does not incorporate common fund principles into ERISA subrogation and reimbursement claims, this law should be reversed.

To the extent that the Eighth Circuit has addressed the issues in this case, this court is bound by Eighth Circuit law. The Eighth Circuit has held that courts must enforce the terms of an ERISA plan and should rely on federal common law only to fill gaps not addressed by plan language. <u>Waller</u>, 120 F.3d at 141. When an employee benefit plan specifically states that attorneys fees and costs will not be deducted from the any reimbursement owed to the plan, that plan language is enforced. <u>Ryan by Capria-Ryan v. Federal Express Corp</u>., 78 F.3d 123, 127 (3d Cir. 1996)(relied on by <u>Waller</u>, 120 F.3d at 141). See also, <u>Administrative Committee of Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Varco</u>, 338 F.3d 680, 30 (7th Cir. 2003); <u>Harris</u>, 208 F.3d at 279; <u>Walker v. Wal-Mart Stores, Inc</u>.,

159 F.3d 938, 940 (5th Cir. 1998); <u>United McGill Corp. v.</u>
<u>Stinnett</u>, 154 F.3d 168, 172-73 (4th Cir. 1998); <u>Health Cost</u>
<u>Controls v. Isbell</u>, 139 F.3d 1070, 1072 (6th Cir. 1997); <u>Bollman</u>
<u>Hat Co. v. Root</u>, 112 F.3d 113, 116-17 (3d Cir. 1997); <u>Givens v.</u>
<u>Wal-Mart Stores, Inc. and Associates' Health and Welfare Plan</u>,
327 F. Supp. 2d 1063 (D. Ne. 2004); <u>IBP, Inc. V. Foust</u>, 987
F.Supp. 714 (N.D. Ia. 1997). State common law to the contrary is
preempted, and while federal common law may supplement and
complement rights and obligations owed under ERISA, it cannot
supplant the express contract provisions of a plan. <u>IBP, Inc</u>.,
987 F. Supp. At 720.

The plan at issue clearly states that "reimbursement will
not be reduced by legal fees or court costs incurred in seeking
the recovery" absent a written agreement to the contrary. No
such written agreement exists. The language of the provision
controls the outcome of this case and entitles Mutual of Omaha to
full reimbursement without any deduction for related legal fees
and expenses.

2.    Reimbursement under the Common Law of Restitution.

Having determined that Mutual of Omaha is entitled to full
reimbursement under the plan language, I need not address its
claim for restitution under the common law to recover payments
made by mistake. However, as an alternative basis for recovery,
I further find that Mutual of Omaha is entitled to full
restitution, not based on the Nebraska common law relied on in
its briefs, but on the federal common law for unjust enrichment.
See e.g. <u>Airco Industrial Gases v. Teamsters Health & Welfare</u>
<u>Pension Fund</u>, 618 F.Supp. 943, 950 n. 6 (D. Del.1985) (existence

of a federal common law action for unjust enrichment preempts
plaintiff's claimed state common law unjust enrichment action).

ERISA incorporates the federal common law to prevent unjust
enrichment and permit restitution for payments made by mistake.
Young America, Inc. v. Union Cent. Life Ins. Co., 101 F.3d 546,
547 (8th Cir. 1996).  A plan is entitled to restitution from plan
participants who were overpaid or received benefits they were not
entitled to under the plan's language. Provident Life & Acc. Ins.
Co. v. Waller, 906 F.2d 985, 994 (4th Cir. 1990); Celi v. Trustees
of Pipefitters Local 537 Pension Plan, 975 F. Supp. 23, 28 (D.
Mass. 1997).  "It is irrelevant whether 'the reason for the
unjust enrichment is an innocent mistake or a material
misrepresentation.'" Celi, 975 F. Supp. at 28 (quoting Floor
Covering Union and Industry Welfare Trust v. Tompkins, 761 F.
Supp. 101, 104 (D. Or. 1991)(quoting Restatement of Law of
Restitution § 28(b) (1936)).  Where the plan advances funds by
mistake or with a reasonable belief that it will be reimbursed if
the participant recovers from a third party, and the participant
is aware of the plan's reimbursement provisions when requesting
and accepting plan benefits, the goals of ERISA and efficient
plan administration are be served by allowing equitable
restitution.  Harris Trust, 57 F.3d at 616; Provident Life, 906
F.2d at 994.

The stipulated facts reflect that Mutual of Omaha sent a
notice of subrogation to the Bruckner/Fowles firm before a
workers' compensation suit was filed.  The plaintiffs knew Mutual
of Omaha was asserting a right to reimbursement yet requested and
accepted benefits for injuries they claimed were work-related.
Under such circumstances, as an alternative to the claim for
reimbursement under the plan language, Mutual of Omaha is

entitled to full restitution, without any deduction for attorneys fees and costs, of amounts it paid, but was not obligated to pay, for Eberspacher's medical expenses.

C.    Insufficient Evidence of Attorney Fees and Expenses.

Finally, Mutual of Omaha claims that the plaintiffs have failed to present a prima facie claim to recover attorneys fees and expenses because they have failed to present evidence as to the value of services provided to the plan. I agree. Assuming the plan owes attorney fees and expenses for Bruckner/Fowles' work, the value to the plan, and not the cost to Eberspacher, is the critical inquiry. It is undisputed that Eberspacher agreed to pay a one-third contingency fee to the Bruckner/Fowles firm, but there is no evidence that Mutual of Omaha would have hired counsel to pursue a subrogation action on that basis. The stipulated facts presented for final resolution of this case do not provide an adequate basis for determining the actual value of services provided by Bruckner/Fowles' to the plan. Waller, 120 F.3d at 141-42. I therefore conclude that even if Mutual of Omaha has a duty to pay attorney fees and expenses, the plaintiffs have failed to present adequate evidence as to the amount of that claim.

IT THEREFORE HEREBY IS ORDERED:

1.    The plaintiffs' motion for summary judgement, filing 22, is denied.

2.    The defendant's motion for summary judgment, filing 24, is granted.

DATED this 8th day of June, 2005.

BY THE COURT:

s/ *David L. Piester*

David L. Piester
United States Magistrate Judge